**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

| | |
|---|---|
| GOSECURE INC.<br><br>v.<br><br>BHANDARI | Case No. 1:21-cv-01222-CMH-IDD |

**<u>DEFENDANT'S AMENDED ANSWER, AFFIRMATIVE DEFENSES</u>**
**<u>AND COUNTERCLAIMS WITH JURY DEMAND</u>**

Defendant Billa Bhandari ("Bhandari"), by and through undersigned counsel, hereby files his Amended Answer, Affirmative Defenses and Counterclaims.

**The Parties**

1.      Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations. To the extent a response is required, the statements of that paragraph are denied.

2.      Mr. Bhandari admits that he has maintained a Virginia address in the recent past.

**Nature and Basis of Action**

3.      The allegations of this paragraph are conclusions of law to which no response is required. To the extent a response is required, the statements of that paragraph are denied.

4.      Defendant does not challenge subject matter jurisdiction.

5.      Defendant does not challenge personal jurisdiction or venue.

**General Allegations**

6.      Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations. To the extent a response is required, the statements of that paragraph are denied.

7.      Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations. To the extent a response is required, the statements of that paragraph are denied.

8.      Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations. To the extent a response is required, the statements of that paragraph are denied.

9.      Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations. To the extent a response is required, the statements of that paragraph are denied.

10.     Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations. To the extent a response is required, the statements of that paragraph are denied.

11.     Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations. To the extent a response is required, the statements of that paragraph are denied.

12.     The allegations as drafted are denied, but Defendant admits that he is the owner of the gosecure.com domain name.

13.     Denied.

14.     Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations. To the extent a response is required, the statements of that paragraph are denied. However, Defendant admits that he is the owner of the @gosecure Twitter account.

15.     Admitted.

16.    The allegations as drafted are denied, but Defendant admits that he is the owner of the gosecure.com domain name and Defendant admits that he opposed the Plaintiff's failed UDRP proceeding.

17.    The allegations as drafted are denied, but Defendant admits that he opposed the Plaintiff's failed UDRP proceeding.

18.    The allegations as drafted are denied, but Defendant admits that Defendant completely prevailed in the UDRP proceeding that was filed by Plaintiff.

19.    The allegations of this paragraph are conclusions of law to which no response is required. To the extent a response is required, the statements of that paragraph are denied.

20.    The allegations of this paragraph are conclusions of law to which no response is required. To the extent a response is required, the statements of that paragraph are denied.

**Count I - Trademark Infringement 15 U.S.C. §1114**

21.    The allegations of this paragraph are conclusions of law to which no response is required. To the extent a response is required, the statements of that paragraph are denied.

22.    Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations. To the extent a response is required, the statements of that paragraph are denied.

23.    The allegations of this paragraph are conclusions of law to which no response is required. To the extent a response is required, the statements of that paragraph are denied.

24.    The allegations as drafted are denied.

25.    Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations. To the extent a response is required, the statements of that paragraph are denied.

26.     Denied.

27.     Denied.

28.     Denied.

29.     Defendant admits that attorney's fees may be available to the prevailing party.

30.     The allegations of this paragraph are conclusions of law to which no response is required. To the extent a response is required, the statements of that paragraph are denied.

## AFFIRMATIVE DEFENSES

Defendant further defends based on the following affirmative defenses:

### Laches

1.      Plaintiff's unreasonable delay in assertion of its purported rights against Defendant had the effect of material prejudice to Defendant as a result of Plaintiff's delay. During the applicable period, Defendant continued to invest time, energy and resources into his domain name.

### Unclean Hands

2.      Plaintiff has acted in bad faith toward Defendant as to the matters contained in the Complaint. Plaintiffs' prior bad faith actions preclude relief against Defendant.

### Waiver

3.      If Plaintiff ever had any legal right to preclude Defendant's use of the purported trademarks, Plaintiff freely and knowingly gave up its rights by waiving any rights it previously held. Defendant relied upon Plaintiffs' waiver of any rights, and such waiver cannot now be reneged given Defendant's detrimental reliance on Plaintiff's waiver of rights.

**<u>Failure to Mitigate Damages</u>**

4.      Plaintiff has not taken reasonable action to minimize any harm or costs it claims were caused by Defendant. Based on the lack of reasonable action on the part of Plaintiff, Defendant is now being blamed for harms that were not the result of his actions.

**<u>No Actual Injury or Damages</u>**

5.      Even if Plaintiff demonstrates liability under any of its claims, Plaintiff cannot demonstrate any actual damages.

**<u>Lack of Causation</u>**

6.      Defendant was not the proximate or legal cause of Plaintiff's alleged injuries.

**<u>Abandonment</u>**

7.      Plaintiff abandoned its trademark by failing to properly police its purported trademark in the marketplace. Any purported rights Plaintiffs may have had in any mark in the United States were abandoned, pursuant to 15 U.S.C. §1127.

**<u>Implied License</u>**

8.      Plaintiffs' failure to police its trademark, acquiescence to Defendant's use, and failure to act led to an implied license in Defendants' use of the trademarks. Defendants detrimentally relied upon the implied license in creating, developing, and maintaining his domain name.

**<u>Acquiescence</u>**

9.      Plaintiff, as well as agents acting under its control, through its own actions and its failure to raise objections to Defendants' actions, acquiesced to, encouraged, or furthered Defendant's actions prior to this lawsuit, but now states an objection to Defendant's use.

**Equitable Estoppel**

10.     Plaintiff's misleading conduct or inaction reasonably led to Defendants' reliance, which resulted in material prejudice to Defendants.

**Express Consent**

11.     Plaintiff, as well as agents acting under its control, expressly assented to, encouraged, or furthered Defendants' actions prior to this lawsuit, but now states an objection to Defendants' actions.

**Implied Consent**

12.     Plaintiff, as well as agents acting under its control, by clear implication, assented to, encouraged, or furthered Defendant's actions prior to this lawsuit, but now states an objection to Defendant's actions.

**DEFENDANT'S COUNTERCLAIMS**

Bhandari hereby asserts counterclaims against GoSecure and Does 1-5 and states as follows:

**The Parties**

1.     Defendant/Counter-Plaintiff/Third-Party Plaintiff Billa Bhandari is an individual that occasionally resides in Virginia.

2.     On information and belief, Plaintiff/Counter-Defendant GoSecure Inc. ("GoSecure") a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 4225 Executive Square, Suite 1600, La Jolla, California 92037.

3.     Defendant Does 1-5 are not currently known to Bhandari, but are likely the natural persons at GoSecure that personally authorized this instant lawsuit, that authorized the

prior failed legal actions undertaken by GoSecure, or the attorneys that filed the failed UDRP

action or the instant lawsuit against Defendant Bhandari.

## Jurisdiction and Venue

4.      Jurisdiction over the subject matter in this action in this Court is pursuant to 28

U.S.C. § 1367(a) because Defendant's claims against Plaintiff and against Third-Party Counter-

Defendants form part of the same case or controversy under Article III of the United States

Constitution as Plaintiff's claims under the Court's original jurisdiction.

5.      This Court has personal jurisdiction over Plaintiff because Plaintiff consented to

jurisdiction in this Court based on its filing of this lawsuit in this Court.

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) and 28

U.S.C. § 1400 because a substantial part of the events giving rise to these claims occurred within

this District.

## Factual Background

7.      Defendant Bhandari has been an entrepreneur for more than 30 years.

8.      Bhandari has over 30 years of experience in building business-oriented, secure,

scalable and mission-critical trading systems around banking, managed services, cybersecurity,

healthcare, and higher education.

9.      Currently, Bhandari is the Co-Founder and director at VitalProbe Inc., which has

an upcoming AI based, wearable device with real time multiple well-being data on cloud with

biometric access.

10.     In June of 1997, Bhandari had been involved with several businesses relating to

software consulting.

11.     Soon thereafter, on September 14, 1999, Bhandari registered the Domain Name gosecure.com because he planned to use the Domain Name in his specialized fields of biometrics, information security and privacy.

12.     Given his experience in his chosen field, Bhandari felt that the keywords contained in the domain name were the heart of "information security" namely, that one should always aim to "go secure" in an online environment.

13.     Since registering the domain name, Bhandari has used the domain in conjunction with a variety of proposed security products, with companies under which he was involved, such as Securitech, Obvue Holdings, Obvue, Inc., and more. None of these companies were in the business of Enterprise/Cyber Security business.  Rather, their focus was consumer and personal data protection.

14.     Most recently, Bhandari has been involved with his business, VitalProbe, which relates to, among other things, electronic medical records, where security is of paramount importance.

**Plaintiff's Failed UDRP Complaint**

15.     On or around July 8, 2021, Plaintiff GoSecure filed a Complaint under the Uniform Domain Name Dispute Resolution Policy (UDRP) ("UDRP Complaint") against Defendant. *See* Exhibit #1.

16.     The UDRP is a process established by the Internet Corporation for Assigned Names and Numbers (ICANN) for the resolution of disputes regarding the registration of internet domain names. It is a mandatory proceeding for registrants of certain top level domain names, including .com domains.

17.     The UDRP is compulsory for registrants of certain domain names and incorporated by reference in all registration agreements between a domain name registrant and its registrar for a domain name containing the generic Top-Level Domains ("gTLD") .com, .net, and .org.[1]

18.     Described by the Fourth Circuit as "adjudication lite" the "UDRP itself contemplates judicial intervention, which can occur before, during, or after the UDRP's dispute resolution process is invoked.[2]

19.     While domain name registrants are obligated to participate in the UDRP process, a UDRP Complainant is *not* required to employ the UDRP process, at any time.

20.     A Complainant may completely ignore the opportunity to engage in a UDRP process, and instead file suit in a court of competent jurisdiction.

21.     If a Complainant seeks to institute a UDRP action, the Complainant must affirmatively file an action with a provider, pay a fee, and otherwise prosecute the UDRP action.

22.     While UDRP actions may be appropriate for certain actions, they are often abused by overzealous Complainants and their attorneys.

23.     One example of this "abuse" of the UDRP processes is instances where a Complainant is found guilty of "reverse domain name hijacking" which is use of the UDRP process "in bad faith to attempt to deprive a registered domain-name holder of a domain name."[3]

---

[1] *See e.g.* A. Michael Froomkin, ICANN's "Uniform Dispute Resolution Policy" Causes and (Partial) Cures, 67 BROOK. L. REV 605 (2002).
[2] *Barcelona.com, Inc. v. Excelentisimo Ayuntamiento de Barcelona*, 330 F.3d 617, 624 (4th Cir. 2003)
[3] *Barcelona.com, Inc.*, 330 F.3d at 624.

24.     Indeed, the Fourth Circuit has previously recognized that "allowing recourse to full-blown adjudication under a particular nation's law is necessary to prevent abuse of the UDRP process."[4]

25.     The Fourth Circuit has also recognized that "domain names are issued pursuant to contractual arrangements under which the registrant agrees to a dispute resolution process, the UDRP, which is designed to resolve a large number of disputes involving domain names, but this process is not intended to interfere with or modify any 'independent resolution' by a court of competent jurisdiction."[5]

26.     The UDRP Complaint pertinent to this matter was filed by Plaintiff GoSecure, Inc., who was also identified as the Complainant in the UDRP Complaint. *See* Exhibit #1 at 1.

27.     The UDRP Complaint specifically named Defendant in this matter "Billa Bhandari" of "105 Waters Landing, Stafford, Virginia, 22554" as Respondent in the UDRP Complaint. *Id.*

28.     Bhandari was the only Respondent in the UDRP action and is the only Defendant in this action.

29.     The UDRP Complaint[6] identified the domain name in dispute as GoSecure.com. *Id.*

30.     GoSecure made a variety of allegations in its complaint, many of which were fraudulent or misleading

31.     In one instance, Complainant falsely alleged that "GoSecure was notified by one of its customers that Respondent was impersonating GoDaddy." *Id.* at 3

---

[4] *Id.*
[5] *Barcelona.com, Inc.*, 330 F.3d at 625.
[6] There were several typographical errors in both the UDRP Complaint and the UDRP Decision, but there is no dispute between the parties that gosecure.com is the domain name subject to dispute.

32.     Complainant then admitted that it had "reached out to the GoDaddy domain broker service to attempt to purchase the disputed domain but did not make the purchase because of the purported "outrageous sum" demanded by Respondent. *Id.* at 3.

33.     Complainant further admitted that it found the price distasteful for Bhandari's "domain that is not in use." *Id.* at 4.

34.     Despite Complainant being unhappy with the amount of money being demanded by Respondent, Respondent had no obligation, whatsoever, to provide any type of offer of sale to Complainant.

35.     Complainant then falsely stated that "Respondent is using the domain to send phishing emails to Complainant's customers." *Id.* at 5.

36.     Complainant also attached an exhibit to the Complaint, identified as "Annex 5" showing nothing other than a redacted picture of a purported email. *See* Exhibit #2.

37.     This allegation was completely fraudulent, and the exhibit intentionally redacted specific information that would have demonstrated the falsity of the allegation.

38.     Notably, Plaintiff cryptically alleged in the UDRP Complaint that "GoSecure was notified by one of its customers that Respondent was impersonating GoDaddy to obtain the recipient's confidential information."

39.     Moreover, the exhibit was submitted as an image, and Complainant made the intentional choice to hide the email headers that would have demonstrated the falsity of the exhibit, and the Plaintiff's allegations.

40.     The exhibit was also suspicious because it demonstrated a purported GoDaddy support number of (480) 505-8821, despite the cited number being an older support number.

41.     The more recently advertised customer care phone number of GoDaddy is (480) 505-8877, which GoDaddy itself has advertised for around the last 5 years.

42.     Complainant next admitted that "there is no content on the infringing domain" of GoSecure.com. *Id.*

43.     Complainant further admitted that "there has been no content on the infringing domain for the last **_ten years_**." *Id.* (emphasis in original).

44.     Complainant further admitted that "Respondent first registered the infringing domain on September 14, 1999." *Id.* at 8.

45.     Complainant further admitted that its litigation strategy is based on the fact that Respondent "refused to sell the domain." *Id.* at 8.

46.     Complainant further admitted that "Complainant was the one who first approached Respondent with the offer to purchase the disputed domain name." *Id.* at 9.

47.     Complainant further admitted that there was an "absence of any content on the website for the past 10 years since 2011 [sic]." *Id.*

**Bhandari UDRP Response**

48.     On August 2, 2021, Bhandari, through his attorney, responded to the UDRP Complaint by filing his comprehensive Response. *See* Exhibit #3.

49.     Bhandari's response encapsulated a wide range of credible defenses. For example, Bhandari specifically pointed out that Complainant had fraudulently made phishing claims. *Id.* at 2, 5, 9, 11, 12, 14.

50.     Bhandari's response also sought a finding of "Reverse Domain Name Hijacking" (RDNH) against Complainant. *Id.* at 14.

51.     Notably, Bhandari's Response pointed out that a finding of RDNH was appropriate because (a)  the domain name was comprised of common terms; (b) the registration of the domain name pre-dated the complainant's trademark rights; (c) Complainant's counsel ignored established UDRP panel positions; (d) the UDRP was filed after failing to purchase the domain name; and (e) with even minimal due diligence, complainant and its counsel it could have discovered that the domain name has been employed in a legitimate business offering. *Id.* at 14.

### UDRP Decision

52.     On August 19, 2021, a three-member panel completely denied Plaintiff's UDRP Complaint, and Defendant Bhandari prevailed, entirely, in the action. The decision was, and continues to be, publicly available online. *See* DECISION, GoSecure Inc. v. Billa Bhandari, Claim Number: FA2107001954083 (available at https://www.adrforum.com/DomainDecisions/1954083.htm) (last visited January 31, 2021), s*ee also* Exhibit #4.

53.     The UDRP Panel was comprised of Ho-Hyun Nahm, Esq. (Chair), Gerald M. Levine, Ph.D., Esq., and Fernando Triana, Esq., as Panelists.

54.     Each of these individual panelists are (a) lawyers and (b) successful intellectual property practitioners with substantial expertise in the industry of domain names and trademarks.

55.     The panel first concluded that "The disputed domain name was registered on September 14, 1999." *Id.* at 4.

56.     The panel next concluded that "Respondent has established that it has rights or legitimate interests in the disputed domain name." *Id.*

57.     The panel next concluded that "Complainant has engaged in Reverse Domain Name Hijacking." *Id.*

58.     The panel next found that "Complainant concedes that its trademark postdates the registration of the disputed domain name." *Id.* at 5.

59.     The Panel next stated that "The Panel finds that Respondent's rebuttal and evidence is persuasive on the issue of rights and legitimate interests. *Id.* at 6.

60.     The Panel next stated "that Respondent does have rights and legitimate interests in the disputed domain name." *Id.* at 7.

61.     The Panel next stated that "the disputed domain name registration predates Complainant's first claimed rights in the GOSECURE mark for almost 16 years." *Id.*

62.     The Panel next stated that Complainant "accuses Respondent of using its email operation for phishing, but the evidence does not support this contention." *Id.*

63.     The Panel next stated that "Complainant initiated these proceedings after failing to purchase the domain name in the marketplace." *Id.*

64.     The Panel next stated that Complainant's "trademark came into being long after the disputed domain name was registered, and Complainant had made prior unsolicited offers to purchase the domain name." *Id.*

65.     The Panel next stated that Complainant's UDRP Complaint was "what is sometimes referred to as a 'Plan B' scenario, where a complainant attempts to purchase a domain name and then switches tactics, bringing a complaint under the Policy despite a clear inability to make the required showings."  *Id.*

66.     The Panel next stated that "Complainant is represented by counsel with experience in the UDRP process, who likely advised Complainant that its position was unsupportable." *Id.*

67.     The Panel then concluded that "the Complaint was brought in bad faith, in an instance of reverse domain name hijacking, and constitutes an abuse of the administrative proceeding." *Id.* at 7.

68.     It was also determined that Plaintiff "engaged in Reverse Domain Name Hijacking." *Id.*

69.     Finally, the Panel concluded "that relief shall be DENIED. Accordingly, it is Ordered that the <gosecure.com> domain name REMAIN WITH Respondent." *Id.* at 7 (emphasis in original).

70.     Defendant Bhandari prevailed completely in the UDRP matter.

71.     Plaintiff GoSecure was completely unsuccessful in the UDRP action.

72.     Plaintiff GoSecure was also found guilty of a non-monetary sanction in the UDRP action.

73.     Undeterred, Plaintiff filed the instant lawsuit on November 2, 2021. *See* Dkt. #1.

74.     The Complaint contains only 4-5 pages of substantive content and includes no exhibits.

75.     Notably, the Complaint in the instant matter was filed by the same attorney,[7] Mr. Andrew Skale, and same law firm, Mintz, Levin, Cohn, Ferris, Glovsky and Popeo PC, that filed the failed UDRP Complaint that resulted in the non-monetary sanctions against the Plaintiff.

---

[7] There is at least some possibility that the Plaintiff's attorneys improperly recommended to Plaintiff GoSecure the filing of the meritless UDRP proceeding. The parties will engage in discovery on this point, and the Defendant may seek to amend his Counterclaim to add new parties given any new factual support for additional counter-defendants.

### Bhandari's General Damages, Special Damages and Injuries

76.     Bhandari incurred general damages and special damages as a result of Plaintiff's failed UDPR complaint.

77.     Bhandari was damaged economically and non-economically as a result of Plaintiff's malicious actions.

78.     Bhandari was forced to retain counsel, at considerable expense, to defend against the UDRP proceeding.

79.     Bhandari was also required to spend substantial amounts of his own professional time responding to the UDRP Complaint.

80.     Bhandari's professional time is precious and is valued at hundreds of dollars an hour.

81.     Bhandari specifically alleges and cites attorneys' fees incurred in the UDRP action, and in this present action, as damages he has incurred.[8]

82.     Moreover, Bhandari's quiet enjoyment of his ownership in his domain name was expressly "interfered with" upon the Plaintiff's filing of the malicious UDRP Complaint.

83.     Pursuant to Para. 4(b) of the Rules for Uniform Domain Name Dispute Resolution Policy, Bhandari's domain name Registrar was obligated to "confirm that a Lock of the domain name has been applied. The Registrar shall not notify the Respondent of the proceeding until the Lock status has been applied. The Lock shall remain in place through the remaining Pendency of the UDRP (Uniform Domain-Name Dispute Resolution Policy) proceeding." *See* Exhibit #5, UDRP Rules at 10.

---

[8] Virginia courts "have permitted a prevailing party, who prosecuted a cause of action for malicious prosecution . . . to recover attorney's fees. *See Prospect Dev. Co. v. Bershader*, 258 Va. 75, 92, 515 S.E.2d 291, 300-01 (1999) (*citing Burruss v. Hines*, 94 Va. 413, 420, 26 S.E. 875, 878 (1897); *Bolton v. Vellines*, 94 Va. 393, 404, 26 S.E. 847, 850 (1897)).

84.     Pursuant to the "Definitions" section of the UDRP Rules, "Lock" "means a set of measures that a registrar applies to a domain name, which prevents, at a minimum, any modification to the registrant and registrar information by the Respondent." *Id.* at 2.

85.     Bhandari's gosecure.com domain name was subject to this registrar "lock" from around July 8, 2021 until around August 19, 2021, which constituted a period of approximately forty-one (41) days.

86.     Plaintiff's UDRP Complaint had the direct effect of placing a "cloud" on Bhandari's title to his domain name and resulted in demonstrable restrictions on Bhandari's freedoms in his property.

87.     This domain name lock, which Plaintiff knew would cloud Defendant's title to his property upon the filing of the UDRP Complaint, meant that Bhandari lost exclusive control of his property for a certain amount of time.

88.     This resulting "cloud" on Defendant's domain name was known, and intended, by Plaintiff when it maliciously filed the UDRP Complaint.

89.     The lock of Bhandari's domain name was an unusual hardship that Bhandari faced in the UDRP proceeding that was not a common consequence of other civil proceedings.

90.     By way of example, when Plaintiff filed this instant lawsuit, in a United States District Court, Bhandari's domain name was *not* subject to any cloud on the title of his domain name.

91.     Plaintiff knew that the UDRP procedure would impose the additional burden of a title cloud on Bhandari's domain name.

92.     Plaintiff knew that the UDRP procedure imposed a special hardship on Bhandari that would not have been imposed had Plaintiff chosen to file a federal lawsuit or file a lawsuit in another venue.

93.     Plaintiff's course of action was chosen by Plaintiff because of the opportunity to impose this additional special burden upon Bhandari.

94.     Plaintiff intentionally declined the opportunity to file an action in a venue that would not impose a cloud on Bhandari's domain name, for an action in a venue that did impose a cloud on Bhandari's domain name.

95.     Plaintiff had complete, total and absolute power to avoid filing suit in a venue that would immediately impose a registrar "lock" and related special damages upon Bhandari and his domain name.

96.     The special damages that Bhandari incurred were completely avoidable, had Plaintiff made the decision to file suit in a venue that did not impose the "lock" on the domain name.

97.     By virtue of filing the UDRP, compared to other enforcement actions in different venues, Plaintiff is directly responsible for the special damages that Bhandari incurred.

## COUNT I – MALICIOUS PROSECUTION

98.     Defendant/Counter-Plaintiff repeats and reasserts each and every statement contained in all preceding Paragraphs as if set forth herein.

99.     Virginia recognizes the tort of malicious prosecution.

100.    The Virginia Supreme Court has also recognized the existence of an action for malicious prosecution following a civil proceeding.[9]

---

[9] *See e.g. Spengler v. Davy*, 56 Va. (15 Gratt.) 381(1859), *Ailstock v. Moore Lime Co.*, 104 Va. 565, 52 S.E. 213 (1905).

101.    To prevail in an action for malicious prosecution a litigant must prove by a preponderance of the evidence that "the prosecution was (1) malicious;[10] (2) instituted by, or with the cooperation of, the defendant; (3) without probable cause; and (4) terminated in a manner not unfavorable to the plaintiff."[11]

102.    The UDRP Complaint filed by Plaintiff was malicious because it was devoid of probable cause.

103.    The UDRP Complaint filed by Plaintiff constituted "sham litigation."[12]

104.    Moreover, the UDRP Complaint filed by Plaintiff constituted "fraudulent litigation."[13]

105.    The UDRP Complaint filed by Plaintiff was objectively baseless.

106.    The independent three-member Panel of successful intellectual property attorneys found that "Complainant concedes that its trademark postdates the registration of the disputed domain name."

107.    Moreover, the Panel also found that Complainant "accuses Respondent of using its email operation for phishing, but the evidence does not support this contention."

108.    Moreover, the Panel found that Plaintiff's UDRP "position was unsupportable."

109.    Moreover, the Panel found that Plaintiff had a "a clear inability to make the required showings."

---

[10] Malice may be inferred from a lack of probable cause. *See Reilly v. Shepherd*, 273 Va. 728, 733, 643 S.E.2d 216, 219 (2007)

[11] *See e.g. Baker v. Elmendorf*, 271 Va. 474, 476, 628 S.E.2d 358, 359-60 (2006), *Andrews v. Ring*, 266 Va. 311, 322, 585 S.E.2d 780, 786 (2003); *Stanley v. Webber*, 260 Va. 90, 95-96, 531 S.E.2d 311, 314-15 (2000)); *Commissary Concepts Mgmt. v. Mziguir*, 267 Va. 586, 589, 594 S.E.2d 915, 917 (2004).

[12] *Balt. Scrap Corp. v. David J. Joseph Co.*, 237 F.3d 394, 399 (4th Cir. 2001)

[13] *Id.*

110.    Moreover, the Panel subsequently concluded that "the Complaint was brought in bad faith, in an instance of reverse domain name hijacking, and constitutes an abuse of the administrative proceeding," which is a clear finding of malice and lack of probable cause.

111.    Each of these findings, alone, is sufficient to demonstrate lack of probable cause and malice in filing the UDRP Complaint.

112.    Moreover, the UDRP Complaint conceals Plaintiff's attempts to "interfere directly with the business relationships" of Bhandari.[14]

113.    Plaintiff knew that institution of the UDRP proceeding would result in a registrar "lock" of the domain name, which had a direct, negative effect on Bhandari.

114.    Plaintiff also knew that Bhandari would be required to spend his resources on attorneys' fees to defend against the UDRP action.

115.    Plaintiff also knew that Bhandari would be required to spend his valuable professional time on the preparation of a defense of the malicious UDRP action.

116.    The Counter-Defendant in this matter, GoSecure, admits in its Complaint that "Plaintiff [GoSecure] filed a complaint with the Uniform Domain Name Dispute Resolution arbitration forum ("UDRP"), seeking to transfer ownership of the gosecure.com domain to Plaintiff." *See* Complaint at ¶ 15.

117.    Accordingly, the failed UDRP action was "instituted by, or with the cooperation of, the [counter]defendant" in this instant matter.

118.    Finally, the UDRP matter was terminated "in a manner not unfavorable to the [counter]plaintiff" because Bhandari succeeded, entirely, by retaining possession of his domain name.

---

[14] *Real Estate Inv'rs, Inc. v. Columbia Pictures Indus.*, 508 U.S. 49, 60-61, 113 S. Ct. 1920, 1928 (1993)

119.    In addition to his complete success in the UDRP proceeding, Bhandari additionally succeeded when the Panel issued non-monetary sanctions against the Plaintiff in the UDRP matter.

120.    Bhandari incurred general and special damages as a result of Plaintiff's malicious prosecution of the UDRP proceeding.

## PRAYER FOR RELIEF

WHEREFORE, Defendant respectfully requests:

1.    Injunctive relief, as sought herein, precluding Plaintiff and related parties from future harassment of Defendant, his domain name, and other intellectual property;

2.    An award for damages, in an amount to be proven at trial that is substantially in excess of $75,001, which may or may not include an election of any and all statutory damages, treble damages, punitive damages or other damages that may be available to Defendant under any statute or cause of action.

3.    An award of attorney's fees to Defendant, pursuant to any applicable statute allowing or requiring such fees, or pursuant to common law; including, but not limited to 15 U.S.C. § 1117(a) and the other statutes cited herein.

4.    An award to Defendant of reasonable litigation expenses;

5.    An award to Defendants of pre-judgment and post-judgment interest, to the extent allowable; and

6.    Such further relief as this Court may deem just and proper.

## JURY DEMAND

Defendant respectfully demands a trial by jury.

* * *

Respectfully submitted,

/s/Eric Menhart
Eric Menhart, Esq.
VA Bar #93901
Lexero Law
512 C St NE
Washington, DC 20002
Phone: 855-453-9376

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was filed via ECF and all parties of record were automatically notified via that system.

/s/ Eric J. Menhart
Eric J. Menhart, Esq.

22