**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

**Alexandria Division**

|  |  |
|---|---|
| GOSECURE INC INC., | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) Civil Action No. 1:21-cv-01222 |
|  | ) |
| BILLA BHANDARI, | ) |
|  | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

THIS MATTER comes before the Court on cross-motions for summary judgment.

Plaintiff GoSecure Inc. ("Plaintiff") has raised a federal trademark infringement claim under the Lanham Act, 15 U.S.C. § 1114, against Defendant Billa Bhandari ("Defendant") for his use of the incontestable mark GOSECURE (hereinafter, "the mark"). Defendant has raised a counterclaim of malicious prosecution under Virginia common law for Plaintiff's previous arbitration action against him under Uniform Domain-Name Dispute-Resolution Policy ("UDRP") proceedings.

Defendant, a provider of cybersecurity products and services, first registered the domain name <gosecure.com> on September 14, 1999. To maintain ownership rights over the domain

1

name, Defendant has renewed his registration annually by providing his contact information to a domain registrar. Each registrant's contact information can typically be recovered through a "WHOIS" query protocol.

Defendant used the domain name in 2002 to establish a website ("the website") in connection with the sale of cybersecurity products. The website ceased having any active content or selling cybersecurity goods and services after 2011.

In 2009, Defendant used the domain name again to establish a blog located at gosecure.wordpress.com ("the blog"). The blog operated in connection with the website, and it remains an active source of information regarding Defendant's professional activities in the fields of information security and privacy.

In 2009, Defendant created a twitter account with the handle @goSecure. The twitter account profile page lists a web link that directs users to Defendant's website. Its byline also states: "GoSecure Inc. is the world's top high-tech holder for online security. We provide you secure, seamless and reliable information security solutions." The account shows no posts after June 17, 2011.

Defendant is currently the co-founder and principal of VitalProbe Inc., a cybersecurity goods company registered in Delaware which operates out of Dubai, United Arab Emirates. Several products under this venture fall under the names

2

GoSecureFund, GoSecure Vault, and GoSecure Share. Defendant has also set up the company GSF Investments International LLC in Dubai, and in connection with that company plans to use the domain name, and the terms "GoSecureScan" and "GoSecureTeleCheck."

Defendant also used the domain name for email purposes up until 2021. There is no evidence that this email account has been used in connection with the sale of cybersecurity goods or services.

Plaintiff, GoSecure Inc., is a Delaware Corporation founded in 2004 that provides cybersecurity goods and services. In 2003 and 2007, Plaintiff sought to purchase the domain name <GoSecure.com> from Defendant to create its own website, but was unsuccesful. In 2014, Plaintiff filed a federal trademark application with the United States Patent and Trademark Office ("USPTO") for the mark GOSECURE, and successfully registered the mark in 2016 to cover a wide array of cybersecurity goods and services. After procuring the mark, Plaintiff again unsuccessfully attempted to purchase the domain name from Defendant. The mark became incontestable five years after its registration.

In 2021, Plaintiff filed an arbitration action against Defendant under the UDRP proceedings established by the Internet Corporation for Assigned Names and Numbers ("ICANN") for

resolving disputes over internet domain names. Plaintiff argued that the domain name should be transferred to itself because it possessed trademark rights in a mark identical to the domain name, and Defendant had allegedly abandoned use of the domain when his website ceased being active. The arbitration panel rejected that argument after Defendant proffered evidence of his recent use of the domain name in connection with his email and blog. The panel also found that Plaintiff was engaging in reverse domain name hijacking, where a party uses the UDRP process in bad faith to force a registered domain holder to give up a domain name. As far as the record shows, Plaintiff first became aware of Defendant's other uses of the mark aside from the website, such as his blog, twitter profile, email, and foreign ventures, during the arbitration proceedings in 2021. It was Defendant who introduced evidence of those other uses, not Plaintiff.

Plaintiff filed the instant lawsuit on November 2, 2021, raising one cause of action of trademark infringement against Defendant for his uses of the GOSECURE mark, while seeking statutory damages and a permanent injunction. Defendant filed his Amended Answer on January 31, 2022, denying trademark infringement, asserting affirmative defenses including laches and acquiescence, and raising a counterclaim of malicious prosecution under Virginia common law for Plaintiff's earlier

4

arbitration action. Plaintiff filed its motion for summary judgment on August 4, 2022, and Defendant filed his motion for summary judgment on August 10, 2022. There are no material facts in dispute and this case is ripe for summary judgment.

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment will be granted unless "a reasonable jury could return a verdict for the nonmoving party" on the evidence presented. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An otherwise properly supported summary judgment motion will not be defeated by the existence of a dispute as to immaterial facts; only disputes over facts that might affect the outcome of the trial will properly preclude the entry of summary judgment. Id. at 248. The claimant bears the initial burden of proof as to each and every element of his claims. See United States ex rel. Berge v. Bd. of Trustees of the Univ. of Alabama, 104 F.3d 1453, 1462 (4th Cir. 1997). "Conclusory or speculative allegations do not suffice, nor does a mere scintilla of evidence in support of [the nonmoving party's] case." Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 649 (4th Cir. 2002) (internal citation omitted) (internal quotation marks omitted); Hoschar v. Appalachian Power Co., 739 F.3d 163, 169 (4th Cir. 2014).

The Court first analyzes Plaintiff's claim that Defendant's uses of the mark on his website, blog, twitter account, foreign ventures, and email constitute trademark infringement.

To prove a trademark infringement claim under 15 U.S.C. § 1114(1)(a), a plaintiff must demonstrate 1) that it owns a valid and protectible mark, and 2) that the defendant's use of a reproduction, counterfeit, copy, or colorable imitation of that mark creates a likelihood of confusion. CareFirst of Maryland, Inc. v. First Care, P.C., 434 F.3d 263 (4th Cir. 2006). The parties agree that Plaintiff owns a valid and protectable trademark in GOSECURE for a wide variety of cybersecurity goods and services because it was registered with the USPTO in 2016 and has gained incontestable status after five years from the date of registration. Therefore, only the second element for trademark infringement is at issue here: whether Defendant has used the mark in such a manner that creates a likelihood of confusion.

Courts consider seven factors when determining whether a likelihood of confusion exists: "(1) the strength or distinctiveness of the plaintiff's mark as actually used in the marketplace; (2) the similarity of the two marks to consumers; (3) the similarity of the goods or services that the marks identify; (4) the similarity of the facilities used by the markholders; (5) the similarity of advertising used by the

markholders; (6) the defendant's intent; and (7) actual
confusion." Id. at 267. However, not all factors are necessarily
relevant in a particular case or given equal weight. Id. at 268.
A court may presume the existence of a likelihood of confusion
under certain circumstances, including when there is no dispute
that the defendant has used an identical mark in connection with
similar goods or services offered by the plaintiff. See Polo
Fashions, Inc. v. Craftex, Inc., 816 F.2d 145 (4th Cir. 1987);
Fox News Network v. Xofnews, 2021 U.S. Dist. LEXIS 217086, at
*18 (E.D. Va. Apr. 6, 2021).

It is undisputed that Defendant used an identical mark to
GOSECURE in several contexts, including his website, blog,
twitter account, email, and foreign ventures. It is undisputed
that at one point in time, his website sold cybersecurity goods
and services, the same market covered by Plaintiff's trademark
registration. It is undisputed that his blog offers information
on cybersecurity developments. It is undisputed that his twitter
profile contains information about cybersecurity services and
goods, even though it was never used to actually sell such goods
and services. The record also shows that Defendant's blog and
twitter account were directly linked to his website, and both
the blog and twitter account remained accessible to web users
even after Plaintiff obtained trademark rights in 2016.
Therefore, the Court finds that web users encountering

7

Defendant's website, blog, or twitter profile would be confused
as to their affiliation with Plaintiff's products, which is
sufficient to demonstrate a likelihood of confusion stemming
from the use of an identical mark in connection with similar
goods and services.

Defendant argues he cannot be held liable for trademark
infringement because he stopped selling goods on his website in
2011, which was years before Plaintiff registered the trademark.
However, a defendant can still be held liable for trademark
infringement even if the defendant's use of the mark does not
result in actual sales, so long as the use would cause a
likelihood of confusion in connection with the plaintiff's sale
of such goods. See Lamparello v. Falwell, 420 F.3d 309, 314 (4th
Cir. 2005). That is because the plaintiff need only show that
consumers are likely to be confused as to whether the defendant
offers the same goods or services as the plaintiff. See People
for Ethical Treatment of Animals v. Doughney, 263 F.3d 359, 366
(4th Cir. 2001).

Defendant's liability does not arise from the mere fact
that he used to sell cybersecurity goods on his website. All of
that conduct took place prior to the mark's registration, and is
therefore protected from a federal trademark infringement claim.
Instead, Defendant's liability stems from a combination of his
website's history of cybersecurity sales coupled with the fact

8

that his website, affiliated blog, and affiliated twitter account, all remained accessible with the same content post-registration. The analysis remains the same even though the website, blog, and twitter account were not able to host any transactions post-registration. Consumers encountering Defendant's website would likely be confused, at least temporarily, as to whether they could use it to purchase cybersecurity goods and services affiliated with Plaintiff, given the identical mark and the existing content suggesting the website operated in the same market as Plaintiff. Such confusion would likely prevent or frustrate internet users from accessing Plaintiff's own services given the identical nature of the marks and website content suggesting similar services. See Doughney, 263 F.3d at 366. The same holds true for the blog and twitter account, which both directly link to or reference the website and feature the mark in connection with offering information on cybersecurity matters. See id. at 366 ("[Defendant]'s web site provides links to more than 30 commercial operations offering goods and services. By providing links to these commercial operations, Defendant's use of [Plaintiff's mark] is in connection with the sale of goods or services.")(internal quotation marks omitted).

As a last resort, Defendant argues that even if his conduct infringed on Plaintiff's trademark, he cannot be held liable

because Plaintiff has not produced evidence that its use of the mark predated any of Defendant's uses. This priority defense fails because Defendant has not established that he acquired common law rights in the mark prior to Plaintiff's registration, see Spartan Food Sys., Inc. v. HFS Corp., 813 F.2d 1279, 1282 (4th Cir. 1987), or that he has continuously used the mark in commerce. See Larsen v. Terk Techs. Corp., 151 F.3d 140 (4th Cir. 1998). With respect to his assertion of common law rights, Defendant has not offered any evidence of market penetration, sales, advertising efforts, or secondary meaning as to his use of the mark before Plaintiff's registration. See Diamonds Direct USA, Inc. v. BFJ Holdings, Inc., 2012 U.S. Dist. LEXIS 161316, at *13 (E.D. Va. Nov. 9, 2012) (finding that proof of use requires evidence of consumer market penetration in a particular location). Even if Defendant did have such common law rights, he has admitted to having abandoned use of the mark in commerce by 2011. That means over three years had passed before Plaintiff successfully registered the mark, which is prima facie evidence of abandonment. See Emergency One, Inc. v. Am. FireEagle, Ltd., 228 F.3d 531, 536 (4th Cir. 2000). Therefore, Defendant's priority defense fails as a matter of law.

Defendant has not offered any evidence to rebut the presumption of a likelihood of consumer confusion, therefore, this Court finds that Defendant is liable for trademark

infringement in relation to his use of the mark on his website, blog, and twitter account.

With respect to Defendant's other uses of the mark, the Court finds there is either insufficient evidence of infringement, or that any uses overseas are not covered by the Lanham Act. Plaintiff has not provided any evidence that Defendant used his email with the mark to sell any cybersecurity goods or services, or that he used that email in connection with the operation of the website. Therefore, there is no evidence the mark was used here in connection with commerce sufficient to create a likelihood of confusion among consumers. With respect to Defendant's foreign ventures that make use of the mark, Plaintiff has not provided any evidence that such foreign ventures have had a "significant effect" on US commerce to be covered by the Lanham Act. See Nintendo of America, Inc. v. Aeropower Co., Ltd., 34 F.3d 246, 250 (4th Cir. 1994). Nor has Defendant demonstrated that its requested relief would present no conflict with the trademark laws of the United Arab Emirates, where Defendant's companies operate. See id. The absence of both these factors necessarily precludes the application of the Lanham Act to Defendant's overseas conduct. See id. at 251. Therefore, Defendant is entitled to summary judgment as to his uses of the mark in his email and foreign ventures.

11

The Court finds that Defendant is entitled to summary judgment as to whether his conduct was willful. To prove willfulness, Plaintiff must produce evidence demonstrating Defendant's "intent to infringe or at least a deliberate disregard for the rights of the mark holder." Teaching Co. P'ship v. Unapix Ent., Inc., 87 F. Supp. 2d 567, 590 (E.D. Va. 2000). Given that the basis of Defendant's liability is the existence of his website, blog, and twitter profile post-registration, the Court will evaluate his intent as to those uses during the post-registration period. It is undisputed that Defendant stopped selling goods on his website in 2011 and had no history of selling goods and services on his blog and twitter page. Moreover, Defendant's website and twitter page have been unaltered since 2011. His blog has not featured any sales content since 2011. Therefore, Plaintiff has not provided any evidence as to Defendant's possible motives for his infringing conduct, especially where it appears that Defendant had no commercial incentive for these post-registration uses.

The Court also finds that Plaintiff is not entitled to a rebuttable presumption that Defendant's conduct was willful. Under 15 U.S.C. § 1117(e), there is a "rebuttable presumption that the [trademark] violation is willful" if the violator "knowingly provided or knowingly caused to be provided materially false contact information to a domain name

registrar." While Plaintiff was unable to recover Defendant's complete registration information through a WHOIS query, there is no evidence that Defendant knowingly provided "materially false contact information," as opposed to merely incomplete information, which is required under § 1117(e). Moreover, Defendant avers that he has consistently provided complete and accurate registration information every year since 1999, and that any incomplete information recovered via a WHOIS query is the consequence of European privacy regulations on domain base disclosures. While the parties dispute the exact cause of the incomplete information, even viewing the evidence in the light most favorable to Plaintiff, no reasonable trier of fact would find that Defendant "knowingly provided or knowingly caused to be provided materially false contact information" to a domain name registry.

Having found Defendant liable for trademark infringement, the Court now addresses his affirmative defenses. Defendant raised a litany of affirmative defenses in his amended answer to the complaint, but only addressed those of laches and acquiescence in his summary judgment filings. With respect to the defenses of laches and acquiescence, the Court finds that Plaintiff is entitled to summary judgment because Defendant has provided no evidence that Plaintiff brought its trademark

13

infringement claim with unreasonable or prejudicial delay, or consented to Defendant's infringing uses.

In determining whether the defense of estoppel by laches applies, courts consider the following factors: "(1) whether the owner of the mark knew of the infringing use; (2) whether the owner's delay in challenging the infringement of the mark was inexcusable or unreasonable; and (3) whether the infringing user was unduly prejudiced by the owner's delay." Brittingham v. Jenkins, 914 F.2d 447, 456 (4th Cir. 1990)(citing Tobacco Workers Int'l Union, Local 317 v. Lorillard Corp., 448 F.2d 949, 958 (4th Cir.1971)).

To determine whether a party has brought a claim with unreasonable delay under the Lanham Act, Courts have borrowed the statute of limitation periods from analogous state law claims. See PBM Products, LLC v. Mead Johnson & Co., 639 F.3d 111, 121 (4th Cir. 2011). The Fourth Circuit has analogized Lanham Act claims to fraud claims under Virginia law, and have accordingly borrowed a two year statute of limitations period from that context. See id. The clock for unreasonable delay begins as soon as the trademark owner "knows or should know she has a provable claim for infringement." What-a-Burger, Va v. Whataburger, Corp. Chris., Tx, 357 F.3d 441, 449 (4th Cir. 2004)(internal quotation marks omitted).

14

While Plaintiff was aware of a possible infringement claim against Defendant for his website as early as 2016, nothing in the record suggests that Plaintiff was also aware of Defendant's other infringing uses, such as his twitter account or blog, at that time. Plaintiff was only clearly put on notice as to those uses in 2021 during the UDRP proceedings, when Defendant introduced evidence of those uses to reject claims that he had abandoned the domain name. Because Plaintiff brought this action within one year of the UDRP proceedings, the Court finds there was no unreasonable delay on Plaintiff's part.

Moreover, Defendant has offered no evidence that in the five years that passed between the mark's registration and the lawsuit, he was unduly prejudiced by either a loss of evidence or economic harm due to expectations surrounding use of the mark. See Ray Communs., Inc. v. Clear Channel Communs., Inc., 673 F.3d 294, 301, 305 (4th Cir. 2012)(finding that Defendant must either demonstrate evidentiary or economic prejudice to successfully raise laches defense). Therefore, in the absence of unreasonable delay and prejudice, this Court finds that Defendant's laches defense fails as a matter of law.

The Court also finds that Defendant's acquiescence defense fails as a matter of law. In contrast to laches which seeks to prevent plaintiffs from sleeping on their rights, the defense of acquiescence centers on whether a plaintiff's conduct "amounted

15

to an assurance to the defendant, express or implied, that the plaintiff would not assert his trademark rights against the defendant." Sweetheart Plastics, Inc. v. Detroit Forming, Inc., 743 F.2d 1039, 1046 (4th Cir. 1984). After learning about Defendant's infringing uses of the mark via his blog and twitter account, Plaintiff brought its action within one year. Therefore, irrespective of Plaintiff's previous attempts to purchase the domain name, it did not provide any sort of assurance that it would refrain from bringing actions against Defendant based on additional uses of the mark it was unaware of at the time. Thus, Defendant's acquiescence defense also fails as a matter of law.

Plaintiff seeks statutory damages in lieu of actual damages pursuant to 15 U.S.C. § 1117(c). More specifically, Plaintiff argues that Defendant's actions amount to willful counterfeiting under § 1117(c)(2), which would entitle it to up to $2,000,000 of damages per counterfeit mark per type of goods sold or offered. For the reasons outlined earlier, Plaintiff has not provided evidence indicating that Defendant's infringing uses were willful.

Alternatively, under 15 U.S.C. § 1117(c)(1), Plaintiff would be entitled to a minimum of $1,000 and maximum of $200,000 worth of statutory damages if it can show that Defendant used a counterfeit mark in connection with the sale or offering of

16

goods. To support a claim of counterfeiting, a plaintiff must provide evidence that the defendant (1) intentionally used a counterfeit mark in commerce; (2) knowing that the mark was counterfeit; (3) in connection with the sale, offering for sale, or distribution of goods; and (4) the use of the counterfeit mark was likely to confuse or deceive. See 15 U.S.C. §§ 1114(1)(a), 1117(b); see also Juul Labs, Inc. v. Unincorporated Associations Identified in Schedule A, No. 1:18-CV-1207, 2018 WL 4854069, at *1 (E.D. Va. Oct. 5, 2018). The strongest evidence of possible counterfeiting is Defendant's use of Plaintiff's corporate name in his twitter account byline. However, that twitter page never directly sold any cybersecurity goods or services, and the website it was linked to stopped selling such goods by 2011, which was several years prior to the mark's registration. On this record, no reasonable trier of fact would find that Defendant either intentionally used a counterfeit mark in commerce, or knew such a mark was counterfeit, when none of his infringing uses of the mark post-registration were commercially beneficial or advantageous. Because Plaintiff has not made the requisite showing under either §§ 1117(c)(1) or (2), the Court finds it is not entitled to statutory damages.

Plaintiff also seeks a permanent injunction against Defendant. Given Defendant's liability for trademark infringement, the Court finds that Plaintiff is entitled to a

permanent injunction enjoining Defendant from any further
unauthorized use of the mark. A court may grant a permanent
injunction if a plaintiff demonstrates "(1) it has suffered an
irreparable injury; (2) remedies available at law are
inadequate; (3) the balance of the hardships favors the party
seeking the injunction; and (4) the public interest would not be
disserved by the injunction." PBM Prod., LLC v. Mead Johnson &
Co., 639 F.3d 111, 127 (4th Cir. 2011). Courts generally presume
the existence of irreparable harm after there is a finding that
a defendant's conduct has caused a likelihood of confusion. See
Scotts Co. v. United Indus. Corp., 315 F.3d 264, 273 (4th Cir.
2002). The remedies available at law, such as monetary relief,
are inadequate here as it would not ensure that Plaintiff is
protected from future infringing uses of its mark. See Dewberry
Engineers Inc. v. Dewberry Grp., Inc., No. 1:20-CV-610-LO-IDD,
2022 WL 1439105, at *3 (E.D. Va. May 6, 2022). The balance of
equities fall in favor of Plaintiff because Defendant has not
demonstrated a legitimate interest in continued use of the mark.
See id. at *4. Finally, the existence of a likelihood of
confusion among current consumers of Plaintiff's goods means
that a permanent injunction would serve the public interest by
preventing future consumers from being misled. See Lone Star
Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc., 43 F.3d

18

922, 939 (4th Cir. 1995). Therefore, injunctive relief is appropriate considering all the foregoing factors.

The Court now addresses Defendant's sole counterclaim of malicious prosecution under Virginia common law against Plaintiff for its UDRP arbitration action. Under the Noerr-Pennington doctrine, a party is generally immune from tort law claims, including malicious prosecution, when petitioning the government for their rights. Baltimore Scrap Corp. v. David J. Joseph Co., 81 F.Supp.2d 602, 620 (D.Md.2000), aff'd, 237 F.3d 394 (4th Cir.2001) (holding that common law claims fall under Noerr-Pennington immunity). The parties here agree that Noerr-Pennington immunity has been extended to cover not only a party's litigation actions, but the use of arbitration to protect trademark rights. There is an exception to this immunity, however, if the claimant can demonstrate both that the original action was "objectively baseless" and "an attempt to interfere directly with the business relationships of a [claimant]." Baltimore Scrap Corp. v. David J. Joseph Co., 237 F.3d 394, 399 (4th Cir. 2001).

The Court finds that Plaintiff's UDRP action to force the transfer of domain rights was not objectively baseless because Plaintiff possessed a registered trademark that was identical to the disputed domain name and was simply seeking to assert its trademark rights. The Court also finds that Plaintiff did not

19

bring the UDRP action solely to interfere with Defendant's business practices. The UDRP panel's conclusion that Plaintiff engaged in bad faith behavior through reverse domain name hijacking is ultimately unconvincing. The panel failed to consider the possibility that Plaintiff was unaware of Defendant's other uses of the domain when it initiated the proceedings, and thus earnestly believed it could demonstrate that Plaintiff had abandoned use of the domain name for purposes of claiming ownership rights over it.

Plaintiff's action, even if ultimately unsuccessful, was neither objectively frivolous nor brought in bad faith, and is therefore immunized under the Noerr-Pennington doctrine. Accordingly, Plaintiff is entitled to summary judgment on Defendant's malicious prosecution counterclaim.

At the summary judgment stage, the Court finds that Defendant is liable for trademark infringement, Defendant's affirmative defenses are dismissed, Plaintiff is entitled to a permanent injunction enjoining Defendant from any further unauthorized uses of the GOSECURE mark, Plaintiff is not entitled to statutory damages, and Plaintiff is not liable for malicious prosecution.

For the aforementioned reasons, the Court grants summary judgment to Plaintiff and denies summary judgment to Defendant. An appropriate order shall issue.

CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
October 26 , 2022

21